Eulogio MORENO, Appellant,

v.

The STATE of Texas, Appellee.

No. 1106–84.

Court of Criminal Appeals of Texas, En Banc.

Jan. 8, 1986.

Victor Falvey, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., & Matthew Dekoatz, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was indicted for burglary of a habitation. After the jury's verdict of guilty, the court assessed punishment at ten (10) years' imprisonment.

On appeal the appellant complained in his fourth ground of error the trial court had erred in refusing to charge on the lesser included offense of criminal trespass despite his timely requested charge.

The Eastland Court of Appeals, based on the fourth ground of error, reversed the judgment and remanded the cause in an unpublished opinion. *Moreno v. State* (No. 11–84–066–CR–Oct. 11, 1984).

We granted the State's petition for discretionary review to determine the correctness of the holding of the Court of Appeals.

The State's evidence reflects that near midnight on June 6, 1982, Luis Escobedo and his girlfriend arrived at their trailer house in Escobedo's truck. Escobedo then allowed his brother to take and use his truck which was normally parked at night at the trailer house. Before retiring, Escobedo determined the door and windows were locked and secured. In the early morning hours of June 7, 1982, about 1:15 a.m. or so, Escobedo awoke to see appellant standing in the doorway of his bedroom, clutching a blanket under his arm. Escobedo asked appellant what he was doing there. Appellant replied, "Everything's cool. I'm leaving," and retreated down the hall. Escobedo followed, and when they reached the living room, Escobedo observed a light flashing through the spare bedroom of the trailer house "like a type of flashlight," apparently shining through the window. Upon entering the living room, appellant stated, "Do you want me to kill you"? and reached behind his back. Escobedo, frightened, backed away. At this point Escobedo saw the blanket that had been hanging on the living room wall was missing, and realized that appellant had taken his blanket. Escobedo also observed his television set and stereo were missing.

Appellant then went to the front door of the trailer house and began struggling to unlock the door. At this point Escobedo "jumped him" and the struggle continued outside the trailer house.

Maria Miranda, Escobedo's girlfriend, came out of the trailer house to see what was happening. Escobedo told her to go to a neighbor's house to call the police—"the sheriffs." Escobedo and Miranda heard appellant say he had a gun and Escobedo began hitting the appellant with a piece of firewood. When Miranda returned from the neighbor's house she obtained an axe from the trailer house. As Escobedo and appellant continued to struggle Miranda hit appellant in the head with the blunt end of the axe two or three times. Escobedo and Miranda heard appellant say he knew where Escobedo's missing property was and he would take them to retrieve the property if Escobedo would let him go.

When the deputy sheriffs arrived, they saw Escobedo on top of appellant on the ground with appellant still struggling. Appellant was clad only in a pair of blue jeans. He had no shirt or shoes. Officers took appellant to a hospital to be treated for injuries and he remained there three or four days.

It was shown that the screen had been taken off the window to the spare bedroom of Escobedo's trailer house, and both the window and screen had "jimmy" marks on them. There was evidence that the window was large enough for a person to crawl through and through which the television

set and stereo could have been passed or carried. The officers searched the nearby area but did not find the missing property. Appellant's camper truck was parked at Albert Perez's house. Perez, a neighbor, consented to having his house searched, but no contraband was found. Perez was the neighbor who had called the sheriff's office at Miranda's request. The missing property was never recovered.

Appellant testified he had been looking for a job, that his friend, Perez, had permitted him to park his truck on his property where he slept in the camper attached to the pickup truck, because there was not enough room in Perez's house. Perez lived across the street from Escobedo. On June 6, 1982, appellant, Perez, his brother and another were at Perez's house. Perez was helping his brother work on a truck, and the others were playing dice. They were all drinking beer. Appellant testified he began drinking about 8:30 a.m. and continued until midnight when the last of the two bars visited closed, and that he was drunk when he went to bed in his truck.[1]

The record reflects the further testimony from appellant:

"Q. What happened about midnight?

"A. Well, we came back and they dropped me off, so I got in my truck, took my shoes off, my shirt. I laid down and went to sleep for awhile. There was a lot of mosquitoes, dogs were barking, so I got up, heard some noise, and I saw across the street the trailer was open, the door was open. So when I got up, I just glanced down there and I figured what was going on, so I just walked over there with a flashlight to see what was going on, and as I was approaching the door, there was this dog, but he didn't bark at me, he just looked at me. And I picked up this blanket that was by the steps, so I walked

in the trailer, flashing the light. And as I was in the trailer—I wasn't all the way in the trailer, I was a couple of steps in the living room, when this man came out and said what was I doing in the trailer. So I told him I wasn't doing nothing. So he started swinging and we walked outside. That's when they started beating on me."

Appellant also testified that after he awakened he noticed that the truck that was usually parked at the trailer house at night was not there. He did not know the name of the man, but knew someone lived at the trailer house. On cross-examination, he was asked:

"Q ... Why did you go over there?

"A Just to see what was going on."

The trial court, inter alia, instructed the jurors that if they did not believe appellant committed the alleged burglary, or if they had a reasonable doubt thereof they were to find the appellant not guilty. Further, the court instructed the jury at appellant's request:

"You are instructed that it is a defense to prosecution that a person through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense. So, if you find from the evidence in this case that at the time defendant entered the habitation he acted under a mistaken belief that he was acting to assist the property owner or occupant, or if you have a reasonable doubt thereof, you will acquit the defendant."

The appellant filed his special requested charge that the jury be instructed on the lesser included offense which the trial court refused.[2] See Article 36.15, V.A.C. C.P.

On appeal the Court of appeals found that appellant's testimony raised the issue of criminal trespass as defined in V.T.C.A.,

---

1. Perez testified four men consumed seven cases of beer during the day, and at 7 p.m. appellant was already drunk.

2. Appellant's timely objection to the charge on the same basis was also overruled. See Article 36.14, V.A.C.C.P.

Penal Code, § 30.05, and reversed the conviction.

Article 37.09, V.A.C.C.P., provides:

"An offense is a lesser included offense if:

"(1) *it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;*

"(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

"(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

"(4) it consists of an attempt to commit the offense charged or an otherwise

**3.** Acts 1965, 59th Leg., p. 317, ch. 722, § 1, eff. Jan. 1, 1966. Amended by Acts 1973, 63rd Leg., p. 972, ch. 399, § 2(A), eff. Jan. 1, 1974.

**4.** "§ 30.02. Burglary

"(a) A person commits an offense if, without the effective consent of the owner, he:

"(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft; or

"(2) remains concealed, with intent to commit a felony or theft, in a building or habitation; or

"(3) enters a building or habitation and commits or attempts to commit a felony or theft.

"(b) For purposes of this section, 'enter' means to intrude:

"(1) any part of the body; or

"(2) any physical object connected with the body.

"(c) Except as provided in Subsection (d) of this section, an offense under this section is a felony of the second degree.

"(d) An offense under this section is a felony of the first degree if:

"(1) the premises are a habitation; or

"(2) any party to the offense is armed with explosives or a deadly weapon; or

"(3) any party to the offense injures or attempts to injure anyone in effecting entry or while in the building or in immediate flight from the building."

[Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. Jan. 1, 1974.]

**5.** Other than the "notice" requirement, there appears to be no culpable mental state required by the language of § 30.05, V.T.C.A., Penal Code.

included offense." [3] (Emphasis supplied.)

The elements of burglary of a habitation as charged in the instant indictment are:

(1) a person

(2) without effective consent

(3) enters a habitation

(4) with the intent to commit theft.[4]

The elements of criminal trespass of property are:

(1) a person

(2) without effective consent

(3) enters or remains on the property or in a building of another

(4) knowingly or intentionally or recklessly [5]

(5) when he had notice that entry was forbidden or received notice to depart but failed to do so.[6]

Since its language does not plainly dispense with the requirement of proof of a mental element, subsections (b) and (c) of § 6.02, supra, clearly require proof of either intent, knowledge, or recklessness. *Day*, 532 S.W.2d at 306, n. 2.

**6.** § 30.05. Criminal Trespass

"(a) A person commits an offense if he enters or remains on property or in a building of another without effective consent and he:

"(1) had notice that the entry was forbidden; or

"(2) received notice to depart but failed to do so.

"(b) For purposes of this section:

"(1) 'entry' means the intrusion of the entire body; and

"(2) 'notice' means:

"(A) oral or written communication by the owner or someone with apparent authority to act for the owner;

"(B) fencing or other enclosure obviously designed to exclude intruders or to contain livestock; or

"(C) a sign or signs posted on the property or at the entrance to the building, reasonably likely to come to the attention of intruders, indicating that entry is forbidden.

"(c) An offense under this section is a Class B misdemeanor unless it is committed in a habitation or the actor carries a deadly weapon on or about his person during the commission of the offense, in which even it is a Class A misdemeanor."

[Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. Jan. 1, 1974. Amended by Acts 1979, 66th Leg., p. 1114, ch. 530, § 3, eff. Aug. 27, 1979; Acts

As can be seen, the offenses of burglary of a habitation and criminal trespass have the same elements except that the offense of burglary has the element of intent to commit a felony or theft, whereas the offense of criminal trespass has no such element, but has in place of such element a "notice" element. See discussion in *Day v. State*, 532 S.W.2d 302, 306 (Tex.Cr.App. 1976).

It has been held that criminal trespass may be a lesser included offense of all three types of burglary. *Day v. State*, supra; *Daniels v. State*, 633 S.W.2d 899, 900 (Tex.Cr.App.1982); *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Cr.App.1985). See also *Johnson v. State*, 665 S.W.2d 554, 556 (Tex.App.-Houston [1st] 1984).

Aguilar v. State, supra, reiterated the two-prong test set forth in *Royster v. State*, 622 S.W.2d 442 (Tex.Cr.App.1981) (opinion on rehearing), for determining whether a jury must be charged on a lesser-included offense. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Second, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Cordova v. State*, 698 S.W.2d 107 (Tex.Cr.App.1985); *Bell v. State*, 693 S.W.2d 434, 439 (Tex.Cr.App.1985), and cases there cited; *Lugo v. State*, 667 S.W.2d 144 (Tex.Cr.App.1984); *Thomas v. State*, 699 S.W.2d 845 (Tex.Cr.App.1985); *Thomas v. State*, 701 S.W.2d 653 (Tex.Cr. App.1985).

The necessity of a charge on a lesser included offense must, of course, be determined on a case by case basis. *Eldred v. State*, 578 S.W.2d 721 (Tex.Cr.App.1979); *Day v. State*, supra, at 315, 316 (opinion on State's motion for rehearing).

1981, 67th Leg., p. 2385, ch. 596, § 1, eff. Sept. 1, 1981.]

■ In determining this question *all* of the evidence at the trial, whether produced by the State or the defendant, must be considered. If evidence from any source raises the issue and a jury charge on the issue is properly requested, the issue must be submitted to the jury. *Lugo v. State*, supra.

■ In the instant case the State in proving the alleged offense of burglary of a habitation also proved the lesser included offense of criminal trespass. Thus the first prong of the *Royster-Aguilar* test is met. Merely because a lesser offense is included within the proof of a greater offense, however, does not always warrant a jury charge on the lesser offense. *Aguilar v. State*, supra, at p. 558.

The remaining question is whether the second prong of the *Royster-Aguilar* test has been met. Is there some evidence in the record that if appellant is guilty, he is guilty of only the lesser included offense?

■ Appellant testified he awoke, heard dogs barking, saw the truck missing, the trailer house door open, and went "over there" "just to see what was going on." He admitted he entered the trailer and took two steps into the living room before being accosted. Appellant's testimony together with all the circumstances presented at trial raises a disputed factual question as to a required element of burglary of a habitation—intent to commit a felony or theft. And this is the element that distinguishes burglary and criminal trespass. Thus we are constrained to conclude that there is "some" evidence that the appellant if guilty is guilty only of criminal trespass.[7] The trial court erred in failing to charge on the lesser included offense of criminal trespass.[8]

---

7. The "notice" requirement of § 30.05 (Criminal Trespass) was satisfied. As the Court of Appeals observed:

"The trailer house was an 'enclosure obviously designed to exclude intruders.' There is evidence that appellant had notice that the 'entry was forbidden.' See Section 30.-05b(2)(B) and Practice Commentary which states 'a habitation gives notice inherently.'"

8. The question presented is a close one. Interrogation did not prevent appellant's testimony from being somewhat ambiguous. If appellant had specifically claimed he was trying to break up a burglary in progress he would not have been entitled to the requested charge. See *Lindsey v. State*, 608 S.W.2d 230 (Tex.Cr.App.1980).

Must reversal follow the determination of this error in this charge? In *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Cr.App. 1984), this Court wrote:

"After researching Texas statutory and decisional law from 1857 forward, we have concluded that Article 36.19 actually separately contains the standards for *both* fundamental error and ordinary reversible error. If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of defendant,' which means no more than there must be *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.

"On the other hand, if no proper objection was made at trial and the accused must claim that the error was fundamental, he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'

"In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."

■ Here the appellant timely objected and as well filed a special requested charge on criminal trespass, which means there was *some* harm from the error. It might well be argued that the jury charge as given amply protected appellant's rights, but the issue of intent to commit a felony or theft was for the jury. In a burglary prosecution the specific intent to steal or commit theft may be inferred from the circumstances, *Simmons v. State*, 590

S.W.2d 137 (Tex.Cr.App.1979); *Martin v. State*, 186 S.W.2d 80 (Tex.Cr.App.1945), but the lack of intent may also be inferred from the circumstances. The jury is empowered to determine the issue of intent. See *Joseph v. State*, 679 S.W.2d 728 (Tex. App.-Houston [1st Dist.] 1984). The issue is not whether appellant's is true or even believable. That issue is exclusively for the jury as the trier of the facts.

■ We conclude that the error was harmful under the circumstances applying the test of *Almanza*. The judgment of the Court of Appeals is affirmed.

TEAGUE, Justice, concurring and dissenting.

But for "Almanza the Terrible", for the West citation see *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1984), which, of course, should be quickly dispatched to Davey Jones' locker, my first vote would be to put this Court's "improvidently granted" stamp to the State's petition for discretionary review because the Eastland Court of Appeals correctly held in its unpublished opinion of *Moreno v. State*, No. 11–84–066–CR, October 11, 1984, that the trial court's refusal to give the appellant's requested instruction on the offense of criminal trespass constituted reversible error.

My next vote is to remand this cause to the Eastland Court of Appeals, for it reconsider its decision in light of what this Court's majority opinion stated and held in "Almanza the Terrible", which decision of this Court had not been finally decided when the court of appeals ordered the trial court's judgment of conviction reversed. In this regard, but only because the majority of this Court declines to adopt either of my first two proposals, I subscribe to what Judge Clinton stated in the dissenting opinion that he filed in *Lawrence v. State*, 700 S.W.2d 208 (Tex.Cr.App., 1985): "Shortly before this Court recessed [this past summer] we remanded at least a dozen causes

---

He did not do so nor did he specifically claim he was guilty of no offense at all. Where the evidence raises only the issue that the accused is guilty of the offense charged or no offense at all, the issue of the lesser included offense is not

raised. *McBrayer v. State*, 504 S.W.2d 445, 447 (Tex.Cr.App.1974); *Thomas v. State*, 578 S.W.2d 691 (Tex.Cr.App.1979). See also *Aguilar*, supra, at p. 558. However, the evidence was sufficient to raise a question for the jury's determination.

to courts of appeals for reexamination in light of *Almanza.* Today the majority takes on the chore, though why this Court should do so in this particular cause is not explained. Consistent with our uniform policy, I would remand for that consideration." Of course, "Foolish consistency is the hobgoblin of little minds, adored by little statesmen and philosophers and divines." Emerson, "Essays: First Series (1841)," quoted in *Mc Elwee v. State,* 589 S.W.2d 455, 455 (Tex.Cr.App.1979), by the author of that opinion, who is also the author of the majority opinion in this cause.

Notwithstanding that the majority of this Court does not vote to do any of the above, it does manage to correctly hold that under this Court's past decisions, see, for example, *Day v. State,* 532 S.W.2d 302 (Tex.Cr. App.1976), the refusal by the trial judge to give the requested instruction on the offense of criminal trespass was error, and further, but erroneously in light of "Almanza the Terrible", holds that such error was harmful.

Because of stare decisis, it is at this point that I must part company with the majority opinion. In holding that the error was harmful, I find that the majority opinion refuses to be faithful to all of the test that this Court's majority enunciated in "Almanza the Terrible"-that relates to objected to charge error. Cf. *Alvarado v. State,* 704 S.W.2d 36 (Tex.Cr.App., 1985).

Although the testimony of Eulogio Moreno, hereinafter referred to as the appellant, may have injected into this cause the issue whether he was also guilty of the offense of criminal trespass, under this Court's majority opinion of "Almanza the Terrible" the inquiry must not stop there in deciding whether such error was or was not harmless. In "Almanza the Terrible", this Court's majority opinion stated the following: "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, *the argument of counsel* and any other relevant information revealed by the record of the trial as a whole." [My emphasis.] Interestingly, the majority opinion in this cause does not even refer to or allude to the jury argument of trial counsel for the appellant, nor does it state whether or not there is "any other relevant information" in this cause, that might cause the error to be harmless. Of course, when you are in the majority, you can excuse yourself from taking all of the test.

I must ask: How can anyone, but a majority of this Court, say that the error of the trial judge in not instructing the jury on the lesser offense of criminal trespass was "calculated to injure the rights of the defendant"?

One of the meanings of the word "calculated" is "planned or contrived to accomplish a purpose." See 196 *Webster's Ninth New Collegiate Dictionary.* Is this Court's majority opinion implicitly holding that the trial judge in this cause "planned or contrived" to deprive the appellant of a fair and impartial trial when he refused the appellant's requested charge on criminal trespass? When this same trial judge instructed the jury on mistake of fact? In light of the evidence, the jury charge that was given, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, how can anyone who subscribes to "Almanza the Terrible", but a majority of this Court, say that the appellant was deprived of a fair and impartial trial? Deprived of due process and due course of law? How can anyone say that the appellant's testimony that went to the offense of criminal trespass was cogent and overwhelming? Was it even reasonable? Did it present a theory which a reasonable mind could entertain, or was it only testimony that was remotely calculated to destroy the State's case when considered in connection with the other testimony in the case, as well as the charge as a whole? "These are all important matters to be considered in passing upon the [degree of harm] in the omission." "Almanza the Terrible", at pp. 173–174.

I find that under the test enunciated by a majority of this Court in "Almanza the Terrible" the trial judge's error was harmless. In this instance, the jury was instructed in the abstract on the definition of the word "intentionally". The jury also was instructed that if it did believe or had a reasonable doubt that the appellant committed the offense of burglary of habitation "with intent to commit theft" it was to return a verdict of not guilty. The jury was further instructed that if it believed or had a reasonable doubt that when the appellant entered the habitation he was then acting "under a mistaken belief that he was acting to assist the property owner or occupant" it was to acquit him. Putting all of these instructions together, it is difficult for me to understand how under "Almanza the Terrible" the refusal to give the requested instruction was harmful error.

For the moment, let us assume that the trial judge had given the instruction over objection. Would such have constituted reversible error under this Court's majority opinion of "Almanza the Terrible"? I do not think so because had the jurors followed the court's instructions to the letter, indeed we must presume they would have, see *Cobarrubio v. State*, 675 S.W.2d 749, 752 (Tex.Cr.App.1983), the jury in this cause would never have reached the issue whether the appellant was guilty of the offense of criminal trespass. Thus, when the jury in this cause found the appellant guilty of the offense of burglary of a habitation, it had no occasion to deliberate whether the appellant might have been guilty of any lesser offense. Under "Almanza the Terrible", the trial judge's error in refusing the appellant's requested instruction on the offense of criminal trespass was harmless to the appellant. Cf. *Thomas v. State*, 587 S.W.2d 707 (Tex.Cr. App.1979).

If the majority of this Court intends to give the objected to charge error test that was enunciated in this Court's majority opinion of "Almanza the Terrible" the meaning it deserves, it should apply that test with vigor, so that the members of the bench and bar of this State will truly appreciate the monster that a majority of this Court turned loose upon the criminal justice system of this State when it decided "Almanza the Terrible".

For all of the above and foregoing reasons, I concur in the result that the majority reaches, that the trial judge committed reversible error in not giving the requested instruction on the offense of criminal trespass, but dissent to the majority's refusal to give meaning to this Court's majority opinion of "Almanza the Terrible".