NO. 07-07-0432-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JULY 1, 2008
______________________________

JOE CHRISTIAN SALAZAR, 

                                                                                                 Appellant

v.

THE STATE OF TEXAS, 

                                                                                                 Appellee
_________________________________

FROM THE 251ST DISTRICT COURT OF POTTER COUNTY;

NO. 55,146-C; HON. ANA ESTEVEZ, PRESIDING
_______________________________

On Motion for Rehearing
_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
          Pending before the court is the motion of Joe Christian Salazar for rehearing. He
contends that we erred in concluding that he was not entitled to an instruction on the
purported lesser-included offense of criminal trespass. Our mistake allegedly occurred
when we said that the indictment failed to aver or contain facts illustrating that he knew
entry into the habitation was forbidden. These particular allegations were inherently part
of the indictment, he continues, because the instrument accused him of entering a
“habitation.” Furthermore, several opinions he cited supposedly support the proposition
that “a habitation is in itself an allegation that [the accused] knew entry was forbidden.” 
(Emphasis in original). The two opinions mentioned are Grissam v. State, No. 02-06-0422-CR, 2007 Tex. App. Lexis 6843 (Tex. App.–Fort Worth, August 24, 2007, pet. granted) and
Jackson v. State, 3 S.W.3d 58 (Tex. App.–Dallas 1999, no pet.). We overrule the motion.
          Both Grissam and Jackson state that for which appellant cites them. Moreover, the
older of the two, i.e. Jackson, refers readers to Moreno v. State, 702 S.W.2d 636 (Tex.
Crim. App. 1986), which also suggests that by proving the accused entered a “habitation,”
the State implicitly establishes that the accused knew entry was forbidden. Moreno v.
State, 702 S.W.2d at 640 n.7.


 Yet, we cannot ignore an important circumstance present
in those cases which is missing here. Grissam, Jackson, and Moreno each involved a trial
wherein someone presented evidence describing the “habitation” and illustrating that it was
a structure with walls, closed doors, locks, and the like. See e.g. Grissam v. State, 2007
Tex. App. Lexis 6843 at *2 (in which the home had a closed back door with a peephole and
metal screen door); Jackson v. State, 3 S.W.3d at 60 (in which the home had a back door
that was closed and locked with a fence around the back); Moreno v. State, 702 S.W.2d
at 637 (in which the trailer house had doors and windows that were locked and secured). 
From that evidence, one could reasonably deduce that the structure at issue was built in
a way that prevented those standing outside from entering. Given that, a factual basis
existed to support the rather broad conclusion uttered in each opinion, i.e. that a habitation
in and of itself gives notice that entry is forbidden.
          Yet, such information is missing from the indictment at bar and, that is what we look
to after Hall. It said nothing about how the “habitation” Salazar burglarized was built or how
it looked. Nor did the averments in the documents indicate whether the edifice was
surrounded by fencing, constructed with walls, enclosed by doors with locks, or even had
other structural qualities preventing people from entering. And, while experience suggests
that most “habitations” have such characteristics, that may not be true in all cases. For
instance, though a tent may fall within the definition of a “habitation,” the nature of its
construction, appearance, and use may fall short of implying that others were not to enter.
          Or, we note that the legislature defined a building to be an “enclosed structure.” 
Tex. Pen. Code Ann. §30.01(2) (Vernon 2003). Yet, the word “enclosed” was not used to
modify the word “structure” when defining a “habitation.” Id. at §30.01(1). Thus, it is
arguable that some “structure” could be a “habitation” even though it had no walls so long
as it was otherwise “adapted for the overnight accommodation of persons.” Id. And if such
a structure was to exist, we question whether its open appearance would suffice in
providing onlookers with notice that their entry was forbidden simply because someone
made it suitable for inhabiting overnight.
          Admittedly, these examples are somewhat extreme. But, they nonetheless depict
situations in which the mere use of the word “habitation” in the indictment could fall short
of inherently indicating that the accused knew his entry was forbidden. Because of that,
we stop short of taking a rule adopted from a trial setting and applying it to a setting
wherein only minimal and conclusory words of an indictment are to be perused. This is not
to say that the wording of an indictment may not be sufficient to allege that the accused
knew his entry was forbidden. Such verbiage or factual recitations may indeed be included
by the State in the charging instrument. We simply hold that the question should be
decided on a case-by-case basis, and that simply describing the structure as a “habitation”
does not ipso facto suffice.

                                                                           Brian Quinn
                                                                          Chief Justice

Publish.



sdException Locked="false" Priority="66" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium List 2 Accent 4"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-0012-CV

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL A

 

JUNE 24, 2011

 

______________________________

 

 

HOME FURNISHINGS, INC., GEORGE C. BURNETT, JR.,

AND MARIE E. BURNETT, APPELLANTS

 

V.

 

JPMORGAN CHASE BANK, NA, APPELLEE

 

 

_________________________________

 

FROM THE 96TH DISTRICT COURT OF TARRANT
COUNTY;

 

NO. 96-229807-08; HONORABLE JEFF WALKER, JUDGE

 

_______________________________

 

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

DISSENTING OPINION

            The memorandum opinions authored by Justices Campbell and Hancock
reach the same final result (affirm), but for different reasons.  While I agree with large portions of both
opinions, because I disagree with the final result, I respectfully dissent.

            




As
stated in both memorandum opinions, this is a suit on a promissory note by a
lender against guarantors for a deficiency judgment.  In that regard, it is undisputed that Home
Furnishings Group, Inc., a non-party, executed and delivered to JPMorgan Chase
Bank NA ("Chase"), a promissory note, in the original principal sum
of $522,000; which note was both guaranteed by Home Furnishings, Inc., George
C. Burnett, Jr. and Marie E. Burnett (Appellants herein; collectively "guarantors"),
and collateralized by assets and inventory located at Home Furnishings Group,
Inc.'s store in Southlake, Texas.  It is
also undisputed that Home Furnishings Group, Inc. defaulted on the note and
that Chase then seized the collateral, foreclosed its security interest, and made
a demand for payment upon the guarantors for the alleged deficiency.  Against those undisputed facts, what is at
issue here is whether Chase met its summary judgment burden of proof in its
suit against the guarantors for the deficiency.  The guarantors contend the trial court
erred in granting Chase summary judgment because a material issue of fact
exists as to the amount due and
owing.  Specifically, guarantors contend,
via an affidavit from George C. Burnett, that Chase has not accounted for or
otherwise allowed credit for certain items of collateral seized by Chase
pursuant to its security agreement; whereas, Chase contends that all credits
have been given.  

            Justice Hancock's opinion takes the position that Burnetts
affidavit does not raise a material issue of fact as to the disputed credits
because there is a perceived temporal gap between the inventory date relied
upon by Burnett in his affidavit and the date the collateral was seized.  In this regard, I agree with Justice
Campbell's opinion in its finding that Burnett's affidavit should be read as
saying the inventory list appended thereto was the inventory on hand as of the
end of the last day the store was open for business.  Although Burnetts affidavit does not
definitively state that the inventory listed was the collateral seized by
Chase, it does state that "no inventory was sold . . . removed, relocated,
or otherwise disposed of after that date." 
It further states that "the items listed on Exhibit C of
Defendants' Response to Plaintiffs Third Amended Motion for Summary Judgment
represent a list of inventory that was in the store at the end of the last day
of business, but which was not sold at
the foreclosure sales and cannot be accounted for." (Emphasis added.)  A reasonable deduction from that statement is
that the guarantors contend Chase seized assets for which the guarantors
received no credit.  While Chase's
summary judgment evidence does state that credits were allowed for the net
proceeds from four separate liquidation sales and a settlement with an alleged
consignor, it does not aver that Chase has allowed credit for all of the collateral seized.  Therein lies the
rub.

            The opinions of both Justices Campbell and Hancock take
the position that the guarantors contractually waived their defense of
"impairment or loss of collateral." 
Apparently they take this position because, at the time the trial court
considered Chase's motion for summary judgment, the guarantors' live pleading
consisted of nothing more than a general denial and an allegation that Chase's
"disposition of the collateral, including the method, manner, time, and
place of said disposition was not commercially reasonable."  A general denial places in issue the amount allegedly due and owing on a
promissory note and a plaintiff seeking recovery upon a note has the burden of
proving the amount of the balance due.  Fikes and Associates v.
Evans, 610 S.W.2d 245 (Tex.Civ.App.--Fort Worth 1980, no writ).  Whether or not the guarantors have plead either
an affirmative defense or assert a counterclaim regarding the collateral
allegedly retained, to establish its entitlement to judgment as a matter of
law, Chase had the burden of proving every essential element of its claim,
MMP, Ltd. v. Jones, 710 S.W.2d 59 (Tex. 1986), including the amount due and
owing.  

            Justice Campbell's opinion concludes that because the
guaranty agreements waive certain defenses there is no material issue of fact which
precludes summary judgment.[1]  He argues that the applicable waiver listed
is the waiver of claims based upon an allegation that Chase "did not
dispose of any collateral."  While I
will agree Chase was under no obligation to pursue its right to foreclose the security
interest it held in the collateral at issue before it sought to enforce the
guaranty agreements, Christian v. Univ.
Fed. Sav. Ass'n, 792 S.W.2d 533, 555
(Tex.App.--Houston [1st Dist.] 1990, no writ), having chosen to do so, it must
account for the collateral seized. Tanenbaum
v. Economics Laboratory, Inc. 628 S.W. 2d 769, 771-72 (Tex. 1982) (holding
that a note holder is not entitled to a deficiency judgment unless collateral
seized has been disposed of in a commercially reasonable manner).[2]        

            Because a material issue of fact exists as to the
guarantors' right to additional credits, Chase has not met its burden of
conclusively proving the amount of its damages. 
Therefore, I believe the trial court erred in granting summary judgment
in favor of Chase.  Tex.
R. Civ. P. 166a(c).    Accordingly, I would reverse and remand for
further proceedings.

 

                                                                                                Patrick
A. Pirtle

                                                                                                       Justice 


 

 











[1]See Justice Campbell's opinion regarding
waiver of the "defense that the collateral was neglected or lost, and
defenses that Chase impaired the collateral, did not dispose of any of the
collateral or failed to obtain a fair market value for the
collateral."  See also Justice Hancock's opinion regarding Rights, Notices, and Defenses that Guarantor Waives and Duties as to Collateral.

 





[2]Although
neither the guarantors nor Chase have briefed the matter, issues pertaining to
the seizure of collateral, its foreclosure, and entitlement to credit for net
proceeds from a commercially reasonable sale thereof are governed by Chapter 9
of the Texas Uniform Commercial Code.  See Tex. Bus. & Com. Code Ann. §§
9.101 - 9.709 (West 2011)