Death Opinion

















IN THE COURT OF CRIMINAL APPEALS


OF TEXAS


 

 




PD-0956-08







JOE CHRISTIAN SALAZAR, Appellant


v.



THE STATE OF TEXAS







On Discretionary Review of Case 07-07-432-CR

of the Seventh Court of Appeals,

Potter County





Womack, J., delivered the opinion of the Court, in which Meyers, Price,
Johnson, Keasler, Hervey, Holcomb, and Cochran, JJ., joined. Keller, P.J.,
filed an opinion concurring in the judgment.



 The issue in this case is whether a habitation inherently provides notice that entry is
forbidden. We hold that it does.I. Background

 Realtor Linda Pohlmeier owned the residence at 2506 South Bivins, in Amarillo.
Although no one lived in the residence, Pohlmeier was in the process of remodeling it for resale.
On January 29, 2007, Pohlmeier locked the doors and windows of the residence, except for one
window which lacked a lock, and left the house. At 6:50 p.m., the Amarillo police dispatcher
alerted officers that an anonymous caller had reported an ongoing burglary at the residence.
Three officers were dispatched to the scene and saw the appellant leave the back door of the
house and run away from them after they called out to him. They soon caught him. One of the
officers returned to the residence and found various household items and supplies - including a
light fixture, a ceiling fan, halogen work lamps, three boxes of children's clothes, a box of
mortar, and an air intake vent - stacked neatly in the alley, just behind the backyard fence.
Pohlmeier identified the items as having been inside the house, except for the boxes of clothing
which she did not own.

 The appellant was indicted for burglary of a habitation. The indictment read that the
appellant "did then and there intentionally or knowingly enter a habitation without the effective
consent of Linda Pohlmeier, the owner of the habitation and attempted to commit or committed
theft of property." At trial, the appellant requested a charge on the lesser-included offense of
criminal trespass. The trial court refused. The jury found the appellant guilty of burglary of a
habitation. He was sentenced to seven years in prison.

 On appeal, the appellant argued that the trial court erred when it denied him the instruction on the lesser-included offense of criminal trespass. The Court of Appeals rejected the
appellant's claim, holding that "the elements or facts necessary to convict one of criminal
trespass were missing from the charge of burglary as modified by the indictment at bar." (1) In
particular, the indictment did not allege the element of notice that entry was forbidden. The Court
stated that "not until the accused becomes aware of the owner's sentiment and then acts or
refuses to act does he commit criminal trespass." (2) Consequently, the Court held that the offense
of criminal trespass was not a lesser-included offense of burglary of a habitation, and the trial
court did not err in refusing to include it in the jury charge. 

 The Court of Appeals based its holding on this court's decision in Hall v. State, (3) which it
read to have modified the test for inclusion of lesser-included offenses in a jury charge. (4) In Hall,
this court held that "the pleadings approach is the sole test for determining in the first step
whether a party may be entitled to a lesser-included-offense instruction," in which "[t]he
availability of a lesser-included instruction . . . still would depend on the second step, whether
there is some evidence adduced at trial to support such an instruction." (5) According to the Court
of Appeals, one element of criminal trespass, namely notice, was not present in burglary as
alleged in the indictment, so criminal trespass was not a lesser-included offense and the trial
court did not err.

 Two months later, the Court of Appeals reheard the appellant's case, this time with the
appellant claiming that because his entry was into a "habitation," then that entry was inherently
forbidden. This inherent prohibition, he argued, automatically established the notice that criminal
trespass requires. Again, the Court of Appeals affirmed. It said that "the question should be
decided on a case-by-case basis, and that simply describing the structure as a 'habitation' does
not ipso facto suffice." (6)

 In this court, the appellant now argues that in Moreno v. State, (7) we previously held that a
"habitation" does inherently give notice that entry is forbidden, and that the Court of Appeals'
decision conflicts with this court's decision. We granted review.

II. Discussion of Law


 A. Statutes

 Burglary, according to Section 30.02(a) of the Penal Code, is committed when a person,
"without the effective consent of the owner, :

 "(1) enters a habitation, or a building (or any portion of a building) not then open to the
public, with intent to commit a felony, theft, or an assault; or

 "(2) remains concealed, with intent to commit a felony, theft, or an assault, in a building
or habitation; or

 "(3) enters a building or habitation and does commits or attempts to commit a felony,
theft, or an assault." 

 Criminal trespass is committed by a person who "enters or remains on or in property,
including an aircraft or other vehicle, of another without effective consent, or [who] enters or
remains in a building of another without effective consent and he:

 "(1) had notice that the entry was forbidden; or 

 "(2) received notice to depart but failed to do so." (8)

 For purposes of the criminal-trespass statute, "'Notice' means: (A) oral or written
communication , (B) fencing or other enclosure obviously designed to exclude intruders ,
(C) a sign or signs posted or at the entry to the building, reasonably likely to come to the
attention of intruders, indicating that entry is forbidden," or other types of markings or crops on
property. (9)

 B. "Habitation"

 There is a hierarchy of properties that carry distinct levels of forbidden entry. In this case,
we can look at this hierarchy in three levels: unimproved land, buildings, and habitations. The
first, unimproved land, may simply be an open field with nothing more than a fence surrounding
its border. "The criminal trespass statute, V.T.C.A. Penal Code, § 30.05 specifies that fencing is
notice that entry is forbidden." (10) Thus, if there is some sort of indication of a separation of
property in the form of a fence, a border, or even a sign, then the entrant has explicit notice that
entry is forbidden.

 The next body of property is the "building," which also confers some explicit notice of
forbidden entry. According to the Penal Code, a "building" is defined as "any enclosed structure
intended for use or occupation as a habitation or for some purpose of trade, manufacture,
ornament, or use." (11) Buildings are typically commercial properties or government offices or
perhaps professional places of employment. Entry is not forbidden unless there are circumstances
notifying the entrant. For example, there are locked doors or signs that indicate privacy or that
give notice that entry by the general public is forbidden in certain, if not all, areas. In these
circumstances, the owner provides notice to forbid entry.

 The third in the hierarchy of properties carries the highest threshold for privacy: the
"habitation." A "habitation" is defined by the Penal Code as "a structure or vehicle that is
adapted for the overnight accommodation of persons, and includes: (A) each separately secured
or occupied portion of the structure or vehicle; and (B) each structure appurtenant to or connected with the structure or vehicle." (12) The most significant element of the definition is the
adaptation "for the overnight accommodation of persons." (13) "What makes a structure 'suitable'
or 'not suitable' for overnight accommodation is a complex, subjective factual question fit for a
jury's determination." (14) The jury may look to a host of considerations such as the contents of the
structure, including bedding, electricity, plumbing, or furniture; the jury may also look to and
consider the type of structure and its typical use as a means for overnight accommodation. (15)

 Because of its nature, a "habitation" carries a higher right of privacy. In fact, most
"habitations" are not open to the public. We learn through common experience and societal
norms that it is essential to seek permission to enter a habitation, rather than to enter it without
permission. Request for entry may be made by non-verbal communication (such as a knock on
the door) as well as by verbal communication. If a habitation did not inherently give notice that
entry is forbidden, then there would be no need to include a doorbell, knocker, or even a lock in a
home. (16) Because we value this right of privacy to the highest degree, and because a "habitation"
is a form of property that carries with it the highest degree of that privacy, we follow Moreno and
hold that a habitation inherently provides notice that entry is forbidden.

 This inherent quality of a habitation's notice that entry was forbidden was relied on by the
drafters of the Penal Code. A Practice Commentary to the Code was prepared by two attorneys;
one was the staff director of the Texas Penal Code Revision Project, and the other was a staff
lawyer for the Project who assisted the House Committee on Criminal Jurisprudence during the
passage of the Penal Code Bill in 1973. (17) Their commentary to the trespass section of the Code
was quite clear on this point: "Whether the trespass is on land or into a building, the victim must
have given some notice that entry is forbidden and the actor must enter without 'effective
consent.' Subsection (b)(2) sets out three methods of giving notice. Under Subsection(b)(2)(B), a
habitation gives notice inherently and requires no special effort by the occupant." (18)

 It is as true for the burglary offense as for the trespass offense that a habitation inherently
gives notice that entry is forbidden. 


 III. Application 

 In this case, the Court of Appeals did correctly identify Hall as the controlling standard
for assessing lesser-included offenses. (19) However, in its analysis of the first step, the Court
determined that the legal elements of criminal trespass were not comparable to the elements of
burglary of a habitation as they were alleged in the indictment. According to the Court, the
notable element absent from the indictment was notice of forbidden entry, which is a requirement
of criminal trespass and yet nowhere mentioned in the indictment. In this case, however, it would
not have been necessary to expressly include the language of notice in the indictment because
notice is inherent in a "habitation." (20) Further, pursuant to Hall, "the elements of the lesser offense
do not have to be pleaded if they can be deduced from the facts alleged in the indictment." (21) We
believe it can be deduced from the indictment that the appellant had notice, quite simply, because
notice is inherent to a habitation and the indictment read "burglary of a habitation."

 Additionally, at the rehearing, the Court of Appeals focused its discussion of Moreno and
its progeny, Jackson and Grissam, on the element, "enclosed structure," as a defining characteristic of a "habitation." (22) However, we do not define a "habitation" according to that element. The
words "enclosed structure" indeed fall within the Penal Code's definition under Section 30.01;
however they define a "building," not a "habitation." (23) In fact, "[t]he Penal Code defines
'habitation' to include 'structures appurtenant to or connected with,' but does not require the
structure to be 'enclosed.'" (24) Rather, the Penal Code's definition focuses on the adaptation of a
structure "for the overnight accommodation of persons," and does not indicate whether that
structure must be enclosed. (25)

 In its discussion of the three aforementioned cases, the Court of Appeals immediately
distinguished them based on the element of "enclosed structure," by stating that "one could
reasonably deduce that the structure at issue was built in a way that prevented those standing
outside from entering." (26) As discussed, the "enclosed structure" pertains to the "building" and not
the "habitation." Nonetheless, the Court attempted to prescribe parameters to the "habitation"
with respect to an "enclosed structure." Not only is the analysis misplaced on an element of a
"building," but also, this discussion would suggest that a "habitation" must be defined and
described in detail in each indictment. To do so would be both cumbersome and outside the
scope of Hall. Hall merely requires that the elements of the proposed lesser-included offense be
compared first with the elements of the indictment before moving on to the evidence. (27) Thus,
when the Court of Appeals held that "such information [was] missing from the indictment at
bar," (28) it appeared to be mixing the two steps, by requiring that evidence from the second step
appear in the first step.

A. Hall and Moreno


 In Hall, this Court clarified the test to be used for lesser-included offenses, selecting the
pleadings approach as the requisite test. (29) "The first step is to [compare] the elements of the
offense as they are alleged in the indictment or information with the elements of the potential
lesser-included offense." (30) Only the statutory elements of the offense (as modified in the
indictment) should be compared; not the evidence presented at trial. (31) The second step in the
analysis is to "ask whether there is evidence that supports giving the instruction to the jury." (32)
The trial court must then ask the question posed by Article 37.09(1) of the Texas Code of
Criminal Procedure: "[A]re the elements of the lesser offense 'established by the proof of the
same or less than all the facts required to [establish] the commission of the offense charged?'" (33)
If they are not, then a trial court acts properly in withholding the instruction. 

 Upon issuing Hall, this court overruled several of its cases, including Moreno, which had
followed varying standards for assessing lesser-included offenses. (34) Nevertheless, while the
method of analyzing lesser-included offenses was overruled, other aspects of the Moreno opinion
were not. In Moreno, this court defined a "habitation" as inherently giving sufficient notice that
entry is forbidden because it is an "enclosure obviously designed to exclude intruders." (35) In Hall,
this court merely set forth new requirements for assessing lesser-included offenses, making no
distinction between Moreno's definition of a "habitation" and that of the Penal Code. As a result,
Moreno's definition of "habitation" was left intact.

 IV. Conclusion

 Because a habitation implicitly gives notice that entry is forbidden, in this case it would
not be necessary to explicitly include in the indictment for burglary of a habitation an allegation
that the appellant had notice that his entry was forbidden. To do so would be redundant. Thus,
the Court erred at the first step of the Hall analysis in determining whether the appellant was
entitled to a lesser-included-offense charge and then further erred in interpreting a "habitation" as
not inherently providing notice that entry is forbidden. Because we hold today that a "habitation"
does imply notice of forbidden entry, we reverse the Court of Appeals' judgment and remand to
the Court for further proceedings consistent with this opinion.


Delivered June 3, 2009.

Publish.
1. Salazar v. State, 259 S.W.3d 232, 234 (Tex. App.-Amarillo May 28, 2008). 
2. Salazar, 259 S.W.3d, at 234.
3. 225 S.W.3d 524 (Tex. Cr. App. 2007).
4. Salazar, 259 S.W.3d, at 233.
5. Hall, 225 S.W.3d, at 535.
6. Salazar v. State, 259 S.W.3d 232, 235 (Tex. App.-Amarillo July 1, 2008).
7. Moreno v. State, 702 S.W.2d 636, 640 n.7 (Tex. Cr. App. 1986); see also Jackson v. State, 3 S.W.3d 58,
62 (Tex. App.-Dallas 1999). This court has overruled Moreno's method of evaluating a lesser-included-offense.
Hall, 225 S.W.3d, at 531 n. 30. We have not addressed Moreno's discussion of habitation.
8. Penal Code § 30.05(a).
9. Penal Code § 30.05(b)(2).
10. Mitchell v. State, 807 S.W.2d 740, 742, n.3 (Tex. Cr. App. 1991).
11. Penal Code § 30.01(2).
12. Penal Code § 30.01(1).
13. Id.
14. Blankenship v. State, 780 S.W.2d 198, 209-10 (Tex. Cr. App. 1989) ("The determination whether a
burglarized place is a 'building' or 'habitation' will be overturned on appeal only if the appellant can show that no
reasonable trier of fact could have found the place to have been a habitation under the criteria above.").
15. Id. (It should be noted that while "[a]ll of these factors are relevant; none are essential or necessarily
dispositive.").
16. This statement does not presume that homes without doorbells, knockers, or locks are not habitations.
Rather, we employ these terms by illustrative use as examples that aid in depicting the inherent notice that entry is
forbidden in habitations. A habitation might include one, several, or none of these items, and perhaps might include
others not mentioned in this opinion.
17. Preface, 3 Vernon's Texas Codes Annotated - Penal Code, at iii (1974). 
18. Id., Practice Commentary to § 30.05, at 258 (emphasis added).
19. Hall, 255 S.W.3d, at 535-36. (The Court must ask whether "an offense is a lesser-included offense of the
alleged offense . . . by comparing the elements of the offense as they are alleged in the indictment or information
with the elements of the potential lesser-included offense.").
20. Moreno, 702 S.W.2d, at 636; Jackson, 3 S.W.3d, at 58.
21. Hall, 225 S.W.3d, at 535.
22. Salazar, 259 S.W.3d, at 235.
23. Penal Code § 30.01(2).
24. St. Julian v. State, 874 S.W.2d 669, 670 (Tex. Cr. App. 1994), citing Penal Code § 30.01(1)(B).
25. Penal Code 30.01(1).
26. Salazar, 259 S.W.3d, at 235.
27. Hall, 225 S.W.3d, at 535-36.
28. Salazar, 259 S.W.3d, at 235.
29. Hall, 225 S.W.3d, at 535. Prior to Hall, courts had used four different analyses for providing lesser-included-offense charges: the "strict-statutory," "cognate-pleadings," "cognate-evidence," and "inherently related"
approaches. Id., at 525.
30. Hall, 225 S.W.3d, at 535-36.
31. Id., at 536.
32. Id.
33. Id., at 536, citing Code Crim. Proc. art. 37.09(1).
34. Hall, 225 S.W.3d, at 524.
35. Moreno, 702 S.W.2d, at 640, n.7; see also Jackson, 3 S.W.3d, at 62.