02-10-186-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00186-CR

 

 


 
 
 Timmy Jay Tamplen
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 271st
District Court OF Wise COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

Appellant
Timmy Jay Tamplen appeals his conviction for burglary of a building.[2] 
In two issues, Tamplen argues that the State failed to provide sufficient
evidence at trial that he intended to commit a theft when he admittedly entered
a building and removed scrap metal from it.  We will affirm.

II.  Background

At
trial, Jeffery Ward testified for the State.  Ward owns land in Wise County,
Texas, near Highway 114.  Ward lived on the land before a fire burned down his
house, his dad’s house, and his dad’s shop.  All that was left standing after
the fire was the burned shop.  Ward testified that the shop contained burned
tools and scrap metal.  Ward also said that from the highway, it would appear
that no one lived on the land.  Even after the fire, Ward still collected his
mail from the property, and on May 8, 2008, he went to his property to retrieve
his mail on his way to pick up his daughter from school.

When
Ward first arrived on his land, he could not see that someone else was there,
but when he backed up to his mailbox, he saw the front of a red pickup truck
near the shop.  Ward immediately went to confront whoever was on his property
because, by his account, no one else should have been there.  Ward encountered
Tamplen and another man.  The other man was standing next to the truck, and
Tamplen “was inside the shop carrying stuff out.”  At trial, Ward identified
Tamplen as the man who had come out of his shop carrying scrap metal.  Ward
said that he confronted the two men.  According to Ward, Tamplen said that he
and the other man had been hired by Mr. and Mrs. Wright to help clean up the
property and that they were intending to tear down the shop.  By his own
account, Ward responded angrily and then called 9-1-1.  Ward described the
location of Tamplen’s truck as being a place where you would park if you did
not want to be seen from the highway.  Ward testified that although he knew who
the Wrights were, he had never granted anyone permission to be on his property
that contained the shop.  Ward said that he was in the process of selling the
scrap metal from the shop himself in an effort to raise money to rebuild his
own home.

Deputy
Richard Luke Campbell of the Wise County Sheriff’s office also testified for
the State.  Campbell responded to Ward’s 9-1-1 call.  Campbell said that when
he arrived, Ward was in his own vehicle and that Tamplen and another man were
standing near Tamplen’s truck.  Ward was visibly upset.  Campbell described
Tamplen’s behavior as “constantly moving,” ”twitching,” and “evasive about
answering questions.”  Much like he had explained to Ward, Tamplen told
Campbell that he had been on the property the evening before and that Mrs.
Wright had asked him to remove some items from the property.  Campbell
testified specifically about Tamplen’s explanation for having been on Ward’s
property the day before:  “It didn’t make a whole lot of sense.  I was trying
to figure out why he had been out there the previous evening; that’s where his
answers were evasive.  He really couldn’t give an explanation for why he was
out there the day before.”  Because of Tamplen’s story, Campbell called Mrs.
Wright.  Campbell described his phone conversation with Mrs. Wright:

I basically asked her
if she had given--given anybody permission to go onto that property?  She said,
no.  That she had seen a guy out there the previous evening, who identified
himself as Tim.  And had asked him if he knew Mr. Ward?  And she believed that
he did know Mr. Ward.  And she said that he hadn’t been there in a while, and
was wanting to know if Mr. Ward needed some help leveling off a piece of the
property?

 

. . .

 

She explicitly said
she did not give anybody permission to be out there?

 

Campbell
said that after speaking with Mrs. Wright, he placed Tamplen under arrest.

The
State called Sandra Kay Wright as well.  Mrs. Wright testified that she barely
knew Ward.  Mrs. Wright said that she had been working with a nonprofit
organization to help build homes destroyed by the same fire that had destroyed
Ward’s home.  She went to Ward’s land because she needed to speak with him.  By
her account, Mrs. Wright saw Tamplen on Ward’s property as she was driving by
on May 7, 2008.  She testified that she had assumed that Tamplen knew Ward or
worked for him because Tamplen was on Ward’s property.  According to Mrs.
Wright, Tamplen was standing near the site of Ward’s former house, so she
approached Tamplen and asked if he knew Ward.  Mrs. Wright said that Tamplen affirmatively
gestured that he did know Ward.  Mrs. Wright told Tamplen that she was trying
to reach Ward.  During her conversation with Tamplen, Mrs. Wright told Tamplen
that she needed to speak to Ward about the nonprofit organization preparing the
foundation site for his new home.  She gave Tamplen her phone number and asked
him to have Ward call her about the foundation site.  Mrs. Wright denied ever
giving Tamplen permission to enter Ward’s property or to remove anything from
the shop.  She testified that she had assumed that Tamplen had Ward’s
permission to be on his property because he was there when she arrived.  Mrs.
Wright also testified that Tamplen never gave her his own phone number.

          Douglas
Lee Wright—another State’s witness and Mrs. Wright’s husband—testified that the
Wrights lived within two miles of Ward’s property and that the first time he
had heard of Mrs. Wright’s conversation with Tamplen was when Campbell called
his home on May 8, 2008.  The Wrights’ home was also destroyed by the fire. 
Mr. Wright said that he had never met Tamplen, did not hire him to clean up
Ward’s property, and had no authority from Ward to give anyone permission to enter
his property.

          Tamplen
testified on his own behalf.  According to Tamplen, Mrs. Wright approached him
on May 7, 2008, introduced herself, and asked “if [he] could be out there the
next day.”  Tamplen said that he believed Mrs. Wright owned the property and
that she had employed him to clear the land.  Tamplen said that Mrs. Wright
asked him to come back with a trailer so that he could haul off debris and tear
down the burned shop.  Tamplen said that he gave her his “card,” which
contained his telephone number.  Tamplen averred that after renting a trailer,
he and his brother returned the next day to clean the property and then Ward
arrived, angry and yelling.  Tamplen said that he tried to explain to Ward that
Mrs. Wright had hired him, that Ward would not listen, and that Ward called
Campbell, who arrived shortly and arrested Tamplen.  The jury found Tamplen
guilty and assessed punishment at ten years’ incarceration and a $500 fine. 
This appeal followed.

III.  Discussion

In
two points, Tamplen challenges the sufficiency of the evidence to support his
conviction.  Tamplen does not dispute that he entered Ward’s property or that
he removed scrap metal from the shop and loaded it onto a truck and trailer;
Tamplen contends only that the evidence is insufficient to prove that he
intended to commit a theft.  We disagree.

A.      Standard
of Review

          Although
Tamplen challenges both the legal and factual sufficiency of the evidence to
support the conclusion that he entered Ward’s shop with the intent to steal the
scrap metal found inside, the court of criminal appeals has held that there is
no meaningful distinction between the legal sufficiency standard and the
factual sufficiency standard.  Brooks v. State, 323 S.W.3d 893, 912
(Tex. Crim. App. 2010) (overruling Clewis v. State, 922 S.W.2d 126,
131–32 (Tex. Crim. App. 1996)).  Thus, the Jackson standard, which is
explained below, is the “only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt.”  Id.  Accordingly, we will apply this same standard of review to
both of Tamplen’s sufficiency complaints.

In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
prosecution to determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of
fact is the sole judge of the weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct.
2075 (2009).  Thus, when performing an evidentiary sufficiency review, we may
not re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the factfinder.  Williams v. State, 235 S.W.3d 742,
750 (Tex. Crim. App. 2007).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@  Hooper v. State, 214 S.W.3d 9,
16–17 (Tex. Crim. App. 2007).  We must presume that the factfinder resolved any
conflicting inferences in favor of the prosecution and defer to that
resolution.  Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; Clayton,
235 S.W.3d at 778.

The
sufficiency of the evidence should be measured by the elements of the offense
as defined by the hypothetically correct jury charge for the case, not the
charge actually given.  Hardy v. State, 281 S.W.3d 414, 421 (Tex. Crim.
App. 2009); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
Such a charge is one that accurately sets out the law, is authorized by the
indictment, does not unnecessarily restrict the State=s
theories of liability, and adequately describes the particular offense for which
the defendant was tried.  Villarreal v. State, 286 S.W.3d 321, 327 (Tex.
Crim. App.), cert. denied, 130 S. Ct. 515 (2009); Malik, 953
S.W.2d at 240.  However, we may not affirm a conviction based on legal or
factual grounds that were not submitted to the jury.  Malik, 953 S.W.2d
at 238 n.3.  The law as authorized by the indictment means the statutory
elements of the charged offense as modified by the factual details and legal
theories contained in the charging instrument.  See Curry v. State,
30 S.W.3d 394, 404–05 (Tex. Crim. App. 2000).

B.      Intent
to Commit a Theft

It
is well settled in this state that the question of the intent with which a
person unlawfully enters a building is a fact question for the jury to be drawn
from the surrounding circumstances.  Moreno v. State, 702 S.W.2d 636,
641 (Tex. Crim. App. 1986); Stearn v. State, 571 S.W.2d 177, 177 (Tex.
Crim. App. [Panel Op.] 1978) (holding evidence of intent to commit theft
sufficient when defendant was found in residence’s kitchen and immediately
fled, even though nothing in house had been disturbed).  That is, the jury is
exclusively empowered to determine the issue of intent, and the events of a
burglary may imply the intent with which the burglar entered the property at
issue.  Moreno, 702 S.W.2d at 641; Joseph v. State, 679 S.W.2d
728, 730 (Tex. App.—Houston [1st Dist.] 1984, no pet.).

In
this case, when considering the evidence in the light most favorable to the
jury’s verdict, the record demonstrates that Tamplen did not have Ward’s
permission to be on his property.  Mrs. Wright, the person whom Tamplen claims
gave him permission to be on Ward’s property, testified that she did not give
him permission to be on the property and that Tamplen falsely represented to
her that he knew Ward the day before Ward discovered Tamplen on the property. 
She also testified, contrary to Tamplen, that he had not given her his contact
information.  The evidence also shows that Tamplen parked his truck and trailer
in a place consistent with a person who was trying to keep his presence on the
property hidden.  Ward witnessed Tamplen loading Ward’s property on Tamplen’s
trailer and truck.  Moreover, Tamplen admitted entering Ward’s property and
loading the scrap metal.  And Campbell testified that Tamplen could not explain
why he was on Ward’s property the day before.

We
conclude and hold that a rational factfinder could have found that Tamplen
intended to commit the theft of removing scrap metal from the shop on Ward’s
property and that a rational factfinder was free to disbelieve Tamplen’s story
that he believed that he had been hired to remove the property from the shop.  See
James v. State, 48 S.W.3d 482, 487 (Tex. App.—Houston [14th Dist.]
2001, no pet.) (holding that whether a defendant’s explanation regarding his
possession of stolen property is reasonable or false is an issue to be decided
by the factfinder); see also
Roane v. State, 959 S.W.2d 387, 389 (Tex. App.—Houston [14th Dist.] 1998,
pet. ref’d) (reasoning that a jury is empowered to determine the issue of
intent in prosecution for attempted burglary of habitation).  Thus, we overrule
both of Tamplen’s issues.

IV.  Conclusion

          Having
overruled both of Tamplen’s issues, we affirm the trial court’s judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL: 
DAUPHINOT,
GARDNER, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  April 28, 2011









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code
Ann. § 30.02(a)(3) (Vernon 2003).