

**NUMBER 13-08-00157-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**RAFAEL GOMEZ,**                                                   **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                              **Appellee.**

On appeal from the 156th District Court of Bee County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides**
**Memorandum Opinion by Justice Yañez**

A jury convicted appellant, Rafael Gomez, of one count of aggravated sexual

assault[1] and three counts of indecency with a child.[2] The jury assessed punishment at (1) life imprisonment and a $10,000.00 fine for the aggravated sexual assault offense,[3] and (2) twenty years' imprisonment and a $10,000.00 fine for each of the three indecency offenses.[4] In eight issues, appellant challenges the legal and factual sufficiency of the evidence supporting his convictions.[5] We affirm.

## I. Background[6]

The two female victims in this case are S.F., who was ten years old at the time of trial, and her sister, J.F., who was fifteen years old at the time of trial.[7] In November and

---

[1] *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (Vernon Supp. 2008). Count 1 alleged that on or about December 26, 2006, appellant intentionally or knowingly penetrated the sexual organ of S.F., a child younger than fourteen years of age, with his finger.

[2] *See id.* § 21.11(a)(1) (Vernon 2003). Count 2 alleged that appellant, on or about November 22, 2006, with the intent to arouse or gratify his sexual desire, intentionally or knowingly engaged in sexual contact with S.F., a child younger than seventeen years of age and not his spouse, by touching her genitals. Count 3 alleged that appellant, on or about November 24, 2006, with the intent to arouse or gratify his sexual desire, intentionally or knowingly engaged in sexual contact with J.F., a child younger than seventeen years of age and not his spouse, by touching her genitals. Count 4 alleged that appellant, on or about December 24, 2006, with the intent to arouse or gratify his sexual desire, intentionally or knowingly engaged in sexual contact with J.F., a child younger than seventeen years of age and not his spouse, by touching her genitals.

[3] *See id.* § 12.32 (Vernon 2003) (providing punishment range for first-degree felony is imprisonment for life or 5 to 99 years, and fine not to exceed $10,000.00).

[4] *See id.* § 12.33 (Vernon 2003) (providing punishment for second-degree felony is imprisonment for 2 to 20 years, and fine not to exceed $10,000.00). The trial court ordered that counts 1 (life) and 2 shall run concurrently and counts 3 and 4 shall run concurrently; however, counts 1 and 3 shall run consecutively.

[5] In "Summary of the Arguments," appellant states his issues as follows: In issues one and two, appellant challenges the legal and factual sufficiency of the evidence as to count 1; in issues three and four, he similarly challenges the sufficiency of the evidence as to count 2; in issues five and six, he challenges the sufficiency of the evidence as to count 3; and, in issues seven and eight, he challenges the sufficiency of the evidence as to count 4. As discussed later, in the body of his brief, appellant characterizes several issues differently than stated in his "Summary of the Arguments."

[6] We begin by addressing the relevant testimony of the witnesses.

[7] The trial took place on March 18, 2008. (We note that the reporter's record is dated "March 18, 2009." Because the judgment is dated March 19, *2008*, we assume the date on the reporter's record is a typographical error.) The indictments alleged that each of the events on which the indictments were based occurred in November and December of 2006.

December of 2006, when the alleged offenses occurred, S.F. and J.F. lived with their grandmother, Loretta, and their aunt, Brandi.[8]

## A. S.F.'s Testimony

S.F. testified that on December 26, 2006, she and J.F. were at Loretta's house. Appellant and his two young daughters, R.G. and P.G., were visiting. Loretta was in her bedroom, and Brandi was at work. S.F. testified that J.F., R.G., and P.G. were outside playing. S.F. and appellant were in the living room watching television. S.F. testified she was wearing capri pants, but changed into shorts at appellant's suggestion. While she was sitting in a chair, appellant approached S.F., knelt down, pulled aside her shorts and underwear, and "played with [her] private" with his finger.[9] During this incident, Loretta came into the room, saw what was occurring, and told S.F. to go to her room. After appellant left, Loretta asked S.F. if it was "the first time it had happened." S.F. responded that there had been several prior incidents that occurred when she was visiting her cousins at appellant's apartment. According to S.F., one of the prior occasions was in December, but prior to that incident, similar incidents had occurred "more than a couple of times." These incidents occurred during overnight visits with her cousins at appellant's apartment. S.F. testified that when the other girls were asleep, appellant would call her to his room and play with her vagina. On these occasions, appellant touched her skin. According to S.F.,

---

[8] Brandi and appellant lived together for seven years and have two children together, R.G. and P.G. Brandi testified that she stopped living with appellant in 2005, and at the time the offenses occurred, she was living with her mother, Loretta, and two nieces, S.F. and J.F. Thus, the victims referred to appellant as their "uncle" because he was the father of their cousins, R.G. and P.G.

[9] S.F. testified that she was referring to her vagina. On direct testimony, S.F. testified appellant touched her skin, not her clothing, but touched her private on the "outside." She was later recalled, and the prosecutor asked her specifically if appellant touched her inside or outside of her vaginal lips. S.F. responded, "Inside."

she told appellant to stop, but he did not. The incidents would last "[j]ust for a minute;" appellant would then tell S.F. to return to the other bedroom and not tell anyone what had occurred. On these occasions, S.F. did not see any private parts of appellant's body. S.F. testified that before the December 26, 2006 incident, she had not told Loretta or anyone else about the incidents.

### B. Loretta's Testimony

Loretta testified that she is the managing conservator of S.F. and J.F.[10] On December 26, 2006, Loretta spent most of the day in her bedroom because she had a "touch of the flu." Appellant and his daughters, P.G. and R.G., were visiting. Loretta testified that she was watching the children play outside from her bedroom window. At some point, she noticed that S.F. was not outside. Loretta testified that she walked into the living room and "saw Rafael leaned over the recliner arm with his hand in [S.F.'s] vagina, going like this (indicating), and his other hand was holding her shorts back." Appellant's hand was going "back and forth" and was "[i]n between the lips of [S.F.'s] vagina." According to Loretta, S.F. was watching television and playing with a game on appellant's phone, and "did not act like she was consciously there." Appellant did not notice Loretta immediately because "[a]pparently he was distracted." Loretta "got right in front of him, and asked him what he was doing." She also mentioned that S.F. was "only nine." Loretta stated that appellant "started sweating like crazy" and responded, "I know, [Loretta]. I messed up, I messed up. It's the first time, it's the first time, [Loretta], I swear

---

[10] The parental rights of S.F. and J.F.'s biological mother were terminated. Their father and step-mother are separated. The girls were placed with other family members, but S.F. was physically abused by her step-grandmother. When S.F. came to live with Loretta, she was already in counseling because of the physical abuse. The girls' biological father (Loretta's son) is disabled and has bipolar disorder.

4

to God." Loretta told appellant to leave and asked the other three girls to come inside. As he was leaving, appellant told P.G., "[y]eah, daddy messed up, daddy's got to go right now." In response to questioning by Loretta, J.F. denied that appellant had done anything to her.

### C. J.F.'s Testimony

J.F. testified that on December 26, 2006, she was outside playing with her cousins. Appellant came outside and told her that "[Loretta] had caught him messing with my sister." J.F. stated that when Loretta asked her if appellant had ever touched her inappropriately, she said '"no." J.F. had also spoken to a counselor and denied that appellant had ever touched her inappropriately. In March, J.F. told Loretta that appellant had touched her inappropriately on several occasions. She stated that the first incident occurred in November or December of 2006. According to J.F., she and appellant were watching wrestling on television at her home. Appellant began wrestling with her and tickling her, and moved his hand so it was touching her vagina over her clothing. The second incident occurred on a different day, but under similar circumstances. Appellant was again visiting, watching wrestling on television, and began wrestling with J.F. and tickling her. He again moved his hand "back and forth" over her vagina. On a third occasion, appellant picked J.F. up and put her on his shoulders. He then started "rocking [his head] back and forth" against her vagina. J.F. said she told appellant to stop and put her down, and that he did so. J.F. testified that she thought this last incident occurred on December 26, 2006, the same day she told Loretta that appellant had not touched her inappropriately. On re-direct examination, J.F. stated that she did not tell Loretta or anyone what had happened because she thought if she didn't say anything, "it [would] all just go away." When asked

5

why she later changed her mind and told Loretta what had happened, J.F. stated that she did so because "it will just get worse if they keep on asking and I'll end up telling later, so better get it over with, even though I didn't want to."

### D. Sublett's Testimony

Debra Sublett, a licensed professional counselor, testified that she had been counseling S.F. since 2005, when S.F. came to live with Loretta. On December 28, 2006, Loretta and S.F. came to her office and reported the December 26 incident with appellant. Sublett called the County Sheriff's Department and also immediately reported the matter to Child Protective Services. S.F. continued to attend counseling sessions with Sublett. Sublett testified that around March, S.F. began pulling out her hair, pulling out her eyebrows and eyelashes, picking her skin and causing it to bleed, and wetting herself in school; eventually, S.F. was unable to function in school and was placed in the "homebound" school program.

Sublett also testified that she began counseling J.F. During these sessions, J.F. told her that on three occasions while watching television at her home, appellant had "held her onto the floor with one of his legs and touched her in the crotch area outside of her clothing." When Sublett asked why J.F. had not reported these incidents earlier, J.F. stated she "had been fearful to tell because she believed that no one would believe her." Sublett also stated that J.F. told her about the December 26 incident when appellant put her on his shoulders and rubbed his head into the crotch area of her pants. On re-direct examination, Sublett testified that it is "not unusual" for a child or teenager to fail to report sexual abuse.

### E. Gonzales's Testimony

Anestacia Gonzales testified that in December 2006, she was an investigator for Child Protective Services. On December 28, 2006, appellant came to her office voluntarily because he wanted to tell "his side of the story" regarding the December 26 incident. Appellant told her that on Christmas day, he was visiting his nieces. He stated that while playing a game on his cell phone, S.F. pulled her shorts to the side, exposing herself to him, and "told him to play with her like he played with [J.F.]." According to appellant, he did touch S.F. on the "skin of her private area," but "denied that he touched her inside or went inside her private area." He also told Gonzales that Loretta walked into the living room "as he was pulling his hand away from her." After appellant left her office, Gonzales contacted law enforcement authorities.

### F. Jimenez's Testimony

Ricardo Jimenez, the lead forensic interviewer for the Children's Advocacy Center, testified regarding his experience in interviewing child victims of sexual abuse. He testified that of the children he has interviewed, approximately ten percent "outcry," or report the abuse, immediately. Approximately ninety percent experience a "delayed outcry," in which the victim fails to report the abuse right away, or denies that it occurred, and only later admits that it occurred. Jimenez interviewed S.F. and J.F., and noted that J.F.'s conduct fits within the "delayed outcry" category.

The State presented several other witnesses, including: (1) the County Sheriff's Office investigator that interviewed Loretta and arrested appellant; (2) the manager of the apartment where appellant lived; and (3) the sexual assault nurse examiner that conducted an examination on S.F.

The only witness presented by the defense was Brandi, who testified that while she

7

was living with appellant, she did not observe any inappropriate behavior between appellant and J.F. Appellant did not testify.

## II. Standard of Review and Applicable Law

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[11] The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony.[12] We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact.[13] Instead, we consider whether the jury reached a rational decision.[14]

When conducting a factual sufficiency review, we view all of the evidence in a neutral light to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt.[15] We will set the verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great weight and preponderance of the evidence.[16] "Although authorized to disagree with the jury's determination even if probative evidence exists which supports the verdict, a

---

[11] *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004).

[12] *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd).

[13] *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Beckham*, 29 S.W.3d at 151.

[14] *Beckham*, 29 S.W.3d at 151.

[15] *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

[16] *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

8

reviewing court must give due deference to the fact finder's determinations concerning the weight and credibility of the evidence and will reverse the fact finder's determination only to arrest the occurrence of a manifest injustice."[17] Unless we can say with some objective basis in the record that the great weight and preponderance of the evidence contradicts the jury's verdict, we will not reverse the judgment as factually insufficient.[18] In conducting a factual sufficiency review, we must also discuss the evidence that, according to the appellant, most undermines the jury's verdict.[19]

A person commits aggravated sexual assault if he intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means.[20] The testimony of a child sexual assault victim alone is sufficient to support a conviction.[21] Additionally, we do not require a child victim's description of the incident to be precise, and she is not expected to express herself at the same level of sophistication as an adult.[22] There is no requirement that the victim's testimony be corroborated by medical or physical evidence.[23] Further, intent can be inferred from the acts, words, and conduct of the accused.[24]

---

[17] *Swearingen v. State*, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).

[18] *Watson*, 204 S.W.3d at 417.

[19] *See Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

[20] *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (Vernon Supp. 2008).

[21] *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005); *see Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); *Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.–Corpus Christi 2008, no pet.); *Ketchum v. State*, 199 S.W.3d 581, 590 (Tex. App.–Corpus Christi 2006, pet. ref'd).

[22] *Soto*, 267 S.W.3d at 332; *Ketchum*, 199 S.W.3d at 590; *see Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990).

[23] *Soto*, 267 S.W.3d at 332.

[24] *Id.* (citing *Gottlich v. State*, 822 S.W.2d 734, 741 (Tex. App.–Fort Worth 1992, pet. ref'd) (finding requisite intent to arouse and gratify sexual desire when defendant placed his hand inside complainant's panties and played with her "private"), *abrogated on other grounds by Arevalo v. State*, 943 S.W.2d 887,

9

"Penetration, within the meaning of section 22.021 of the penal code, occurs so long as contact with the female sexual organ could reasonably be regarded by ordinary English speakers as more intrusive than contact with outer vaginal lips."[25] "Penetration of the vaginal canal is not required to prove penetration."[26] "'Female sexual organ' is a more general term than 'vagina' and refers to the entire female genitalia, including both vagina and the vulva."[27] "Touching beneath the fold of the external genitalia amounts to penetration within the meaning of the aggravated sexual assault statute."[28] Penetration may be proved by circumstantial evidence, and there is no requirement that the child victim be able to testify as to penetration.[29] Moreover, the slightest penetration is sufficient to uphold a conviction if it is proven beyond a reasonable doubt.[30]

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge.[31] Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant

---

888-90 (Tex. Crim. App. 1997)).

[25] *Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App.–Dallas 1994, no pet.) (citing *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992)).

[26] *Id.*

[27] *Id.*

[28] *Id.*; *see also Cramer v. State*, No. 13-06-587-CR, 2008 Tex. App. LEXIS 8951, at *7 (Tex. App.–Corpus Christi Nov. 20, 2008, no pet.) (mem. op., not designated for publication).

[29] *Villalon*, 791 S.W.2d at 133.

[30] *Sherbert v. State*, 531 S.W.2d 636, 637 (Tex. Crim. App. 1976).

[31] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Hernandez v. State*, 190 S.W.3d 856, 863 (Tex. App.–Corpus Christi 2006, no pet.); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd).

was tried.[32]

To establish appellant's guilt as to Count 1 (aggravated sexual assault), the State was required to prove that appellant (1) on or about December 26, 2006; (2) intentionally or knowingly; (3) caused his finger to penetrate S.F.'s sexual organ; and (4) S.F. was a child under fourteen years old.[33] As to Count 2 (indecency with a child by contact), the State was required to prove that appellant (1) on or about November 22, 2006; (2) intentionally or knowingly; (3) engaged in sexual contact with S.F. by touching her genitals; (4) with the intent to arouse or gratify his sexual desire; and (5) S.F. was a child younger than seventeen years old and not appellant's spouse.[34] As to Count 3 (indecency with a child by contact), the State was required to prove that appellant, (1) on or about November 24, 2006; (2) intentionally or knowingly; (3) engaged in sexual contact with J.F. by touching her genitals; (4) with the intent to arouse or gratify his sexual desire; and (5) J.F. was a child younger than seventeen years old and not his spouse.[35] As to Count 4, the State was required to prove that appellant (1) on or about December 24, 2006; (2) intentionally or knowingly; (3) engaged in sexual contact with J.F. by touching her genitals; (4) with the intent to arouse or gratify his sexual desire; and (5) J.F. was a child younger than seventeen years old and not his spouse.[36]

### III. Discussion

---

[32] *Golllihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik*, 953 S.W.2d at 240.

[33] *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (Vernon Supp. 2008).

[34] *See id.* § 21.11(a)(1) (Vernon 2003).

[35] *See id.*

[36] *See id.*

11

In his first issue, appellant contends the evidence is legally insufficient to support his conviction for aggravated sexual assault because S.F. gave two different versions of events. Specifically, appellant argues that S.F. testified that appellant played with her vagina on the "outside," but later testified that appellant touched her "inside" the lips of her vagina. Similarly, in issue two, in support of his argument that the evidence is factually insufficient to support his conviction, appellant argues only that "[t]here was evidence of penetration and there was evidence of no penetration."

On direct examination, S.F. testified that appellant touched her on the "outside" of her private part. When recalled by the State, she testified that appellant touched her "inside" the lips of her vagina. Elizabeth Andelman, the sexual assault nurse examiner that examined S.F., testified that based on what S.F. told her, appellant put his finger inside her vagina. Moreover, Loretta testified that she observed appellant with his hand "[i]n between the lips of [S.F.'s] vagina."

It is within the sole province of the jury to reconcile conflicts, contradictions, and inconsistencies in the evidenced and testimony.[37] The jury is responsible for judging the credibility of the witnesses, and it is free to believe or disbelieve any portion of a witness's testimony.[38] After reviewing the evidence in the light most favorable to the verdict, we conclude that any rational trier of fact could have found the essential elements of aggravated sexual assault beyond a reasonable doubt.[39] Therefore, the evidence is legally sufficient to support appellant's conviction for Count 1, aggravated sexual assault.

[37] *Swearingen*, 101 S.W.3d at 97.

[38] *Cain v. State*, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997).

[39] *Hooper*, 214 S.W.3d at 13.

Moreover, after reviewing the evidence neutrally, we do not find that the proof of guilt is greatly outweighed by evidence to the contrary, nor is it so weak as to undermine confidence in the jury's determination.[40]   Thus, we further conclude the evidence is factually sufficient to support appellant's conviction for aggravated sexual assault.  We overrule appellant's first and second issues.

In his third issue, appellant argues the evidence is factually insufficient to support his conviction for Count 3 (indecency with a child by touching J.F.'s genitals).  In his fourth issue, appellant argues the evidence is factually insufficient to support his conviction for Count 2 (indecency with a child by touching S.F.'s genitals).[41]   Appellant argues that the evidence is factually insufficient as to Counts 2 and 3 because "the record is devoid of any statements made by [a]ppellant to the victim, before, during or after the act that would manifest his intent that his sexual desire was aroused or gratified."

We find appellant's argument to be without merit.  The jury, as the factfinder, was empowered to determine the issue of intent.[42]   The jury could have inferred appellant possessed the requisite intent from either his words, acts, or conduct and the surrounding circumstances.[43]   Because it is difficult to prove by direct evidence what a defendant intended at the time of the crime, a jury may base its inferences on circumstantial

---

[40] *Johnson*, 23 S.W.3d at 11.

[41] We note that in the body of his brief, appellant characterizes issues three and four differently than stated in his "Summary of the Arguments."  We address appellant's arguments as they appear in the body of his brief, not as they appear in the "Summary of the Arguments."  In his third issue, appellant appears to also challenge the legal sufficiency of the evidence supporting his conviction in Count 3 by stating that "there was no evidence that [he] intended to arouse or gratify his sexual desire."  In his fourth issue, appellant challenges the factual sufficiency of the evidence supporting his conviction in Count 2.

[42] *Moreno v. State*, 702 S.W.2d 636, 641 (Tex. Crim. App. 1986).

[43] *Guevara v. State*, 152 S.W.3d 45, 49-50 (Tex. Crim. App. 2004); *DeLeon v. State*, 77 S.W.3d 300, 312 (Tex. App.–Austin 2001, pet. ref'd).

13

evidence.[44]  An oral expression of intent is not required; the conduct itself is sufficient to infer intent.[45]

Here, S.F. testified that on several occasions, appellant called her to his room when her cousins were asleep and played with her vagina.  He also told her not to tell anyone. J.F. testified that on two occasions, appellant was wrestling with her and touched her vagina over her clothing.  During the second incident, appellant moved his hand "back and forth" on her vagina.  During the incident when J.F. was on appellant's shoulders, she testified that he "started moving his head back and forth up against me."  We conclude that based on this evidence, the jury could have reasonably inferred from appellant's conduct and the surrounding circumstances that appellant intended to arouse or gratify his sexual desire.[46]  We also conclude that a rational trier of fact could have found that appellant was guilty of Counts 2 and 3.[47]  We hold the evidence is legally and factually sufficient to support appellant's conviction in Counts 2 and 3.  We overrule issues three and four.

In issue five, appellant contends the evidence is legally insufficient to support his conviction as to Count 3 (indecency with a child by touching J.F.'s genitals on or about November 24, 2006).  In issue five, appellant appears to be challenging the intent element. He argues that there was no conduct from which it could be inferred that he acted with the intent to arouse or gratify his sexual desire.  We overrule issue five for the same reasons stated above.

---

[44] *Guevara*, 152 S.W.3d at 49-50.

[45] *Connell v. State*, 233 S.W.3d 460, 467 (Tex. App.–Fort Worth 2007, no pet.).

[46] *See Guevara*, 152 S.W.3d at 49-50.

[47] *See Hooper*, 214 S.W.3d at 13.

14

In issue six, appellant challenges the factual sufficiency of the evidence supporting his conviction as to Count 3. Appellant states that J.F. "gave no date," but testified as to an incident involving wrestling with appellant. Appellant then states that "there was another occasion" involving appellant putting J.F. on his shoulders. Appellant states, without argument or authority, that "[t]he State was not requested to elect as to which one of the above two occurrences they were proceeding on." We have already determined that the evidence is legally and factually sufficient to support appellant's conviction as to Count 3. To the extent that appellant is asserting that the State was required to elect between the wrestling incident and the incident involving appellant putting J.F. on his shoulders, we hold the issue is inadequately briefed, and appellant has preserved nothing for review.[48] We overrule issues five and six.

In issue seven, appellant contends the evidence is legally insufficient to support his conviction as to Count 4. Appellant again notes that "although she gave no date," J.F. testified as to a wrestling incident and "another occasion" involving appellant putting J.F. on his shoulders. Again, without argument or authority, appellant asserts that "[t]he State was not requested to elect as to which one of the above two occurrences they were proceeding on." We hold this issue is inadequately briefed and is not preserved for our review.[49] Appellant also argues that there was no evidence of appellant's intent to arouse or gratify his sexual desire. We reject this argument for the same reasons as outlined above.

In issue eight, appellant contends the evidence is factually insufficient to support

---

[48] *See* TEX. R. APP. P. 38.1(i); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008).

[49] *See* TEX. R. APP. P. 38.1(i); *Busby*, 253 S.W.3d at 673.

15

his conviction in Count 4. In support, appellant makes the same arguments: (1) "[t]he State was not requested to elect" between the wrestling incident and the incident involving appellant putting J.F. on his shoulders; and (2) there was insufficient evidence of appellant's intent to arouse or gratify his sexual desire. With respect to the election issue, we have already determined that it is inadequately briefed and not preserved for our review.[50] With regard to the challenge to the intent element, we reject it for the same reasons as outlined above. We hold the evidence is legally and factually sufficient to support appellant's conviction in Count 4. We overrule issues seven and eight.

### Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgment.

_____
LINDA REYNA YAÑEZ,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 31st day of August, 2009.

---

[50] *See* TEX. R. APP. P. 38.1(i); *Busby*, 253 S.W.3d at 673.